IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RYAN TYLER MERRILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. CIV-22-07-RAW-GLJ |
| JONATHAN SEAGRAVES, | ) |
| GREG FELL, CITY OF BROKEN | ) |
| ARROW, and BRANDON | ) |
| BERRYHILL, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

This case arises from an encounter between Ryan Tyler Merrill ("Plaintiff"), and Broken Arrow Police Department officers Jonathan Seagraves and Greg Fell. Plaintiff sued Defendants Jonathan Seagraves and Greg Fell individually, Brandon Berryhill in his official capacity as the Broken Arrow Police Chief, as well as the City of Broken Arrow ("City"). Plaintiff alleges claims under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. On October 14, 2022, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636. *See* Docket No. 45. For the reasons set forth below, the Defendant Brandon Berryhill's Motion to Dismiss [Docket No. 28] should be GRANTED, and Defendant City's Motion to Dismiss [Docket No. 30] should be GRANTED IN PART and DENIED IN PART.

1

## BACKGROUND

As relevant to this motion, Plaintiff alleges in his Amended Complaint that he was driving on December 3, 2020, in Broken Arrow, Oklahoma when he was pulled over by Seagraves. *See* Docket No. 24, p. 3, ¶¶ 10-11. Seagraves was not wearing a mask when he approached the vehicle, so Plaintiff only partially rolled down his window to pass his license and insurance verification out of concern regarding the high level of COVID-19 at the time. *Id.* Seagraves went back to his car, prepared a citation, and returned to the vehicle where Plaintiff again only partially rolled down his window to receive a citation for an expired tag. Seagraves demanded he fully roll down the window, but Plaintiff declined to roll it further than he deemed necessary to receive and sign the citation. Seagraves then returned to his vehicle without giving further instructions. *Id.*, p. 4, ¶ 12. It is not clear from the Amended Complaint whether Seagraves attempted to pass the citation through the partially open window or whether Plaintiff signed the citation before Seagraves returned to his vehicle.

Plaintiff next stated that after Seagraves returned to his patrol vehicle, he waited "several more minutes" then drove within the speed limit toward his stepbrother's house while being followed by Seagraves. During the drive, Seagraves was also joined by other officers, including Fell. Upon arriving, Plaintiff states that he "ran up on a porch where he had been working," turned to face the approaching officers, and held his hands in the air with his phone in his right hand. He asserts that he had no weapon and did not act in an aggressive manner. *Id.*, p. 4, ¶¶ 13-14. Both Seagraves and Fell approached Plaintiff with

2

their firearms pointed at him while he pleaded with the officers not to kill him. *Id.*, p. 5, ¶ 15. Without warning, Seagraves drew his Taser and shot Plaintiff in the chest, incapacitating him and causing him to fall face down. Without warning, Seagraves then discharged the Taser a second time, hitting Plaintiff in the back. *Id.*, p. 5, ¶¶ 17-19. EMSA personnel responded to the scene, but Seagraves and Fell refused transport and instead took him to the Broken Arrow City jail before transporting him to St. John Medical Center in Tulsa, Oklahoma, where he was admitted in restraints. *Id.*, ¶¶ 22-23.

## PROCEDURAL HISTORY

Plaintiff filed the present case in this Court on January 4, 2022, against the above-named Defendants. *See* Docket No. 2. Fell, Berryhill, and City each filed a Motion to Dismiss while Seagraves filed an Answer. *See* Docket Nos. 4-5, 9-10. At the invitation of the court, Plaintiff filed an Amended Complaint on May 16, 2022. *See* Docket Nos. 23, 25. In his Amended Complaint, Plaintiff brings a claim against Berryhill and City through 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments to the U.S. Constitution, alleging municipal liability. He also alleges unconstitutional use of excessive force by Seagraves and failure to intervene by Fell. Fell, Berryhill, and City again each filed a Motion to Dismiss while Defendant Seagraves filed an Answer to the Amended Complaint. *See* Docket Nos. 28-31. The undersigned Magistrate Judge now addresses the motions to dismiss by Defendants Berryhill and City as to all claims against them.[1]

---

[1] The undersigned Magistrate Judge will address Defendant Fell's Motions to Dismiss in a separate Report and Recommendation. *See* Docket No. 47.

## ANALYSIS

### I.    Applicable Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement … To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-557, 570) (internal quotation marks omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). This requires a determination as to "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under

4

the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)).

## II. Berryhill Motion to Dismiss

Berryhill moves to dismiss the claims against him in his official capacity, arguing they are superfluous given that City is already a named Defendant in the action. "Suing individual defendants in their official capacities under § 1983. . . is essentially another way of pleading an action against the county or municipality they represent." *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). In the present case, Berryhill is sued in his official capacity as the Chief of Police for the city of Broken Arrow. This is essentially a suit against City. *Id*. As the City is already a named Defendant in this case, the suit against Berryhill is duplicative and the undersigned Magistrate Judge therefore finds that dismissal of Plaintiff's claim as to Berryhill is warranted as a matter of judicial economy and efficiency. *See, e.g., Busby v. City of Tulsa*, 2012 WL 1867167, at *5 (N.D. Okla. May 22, 2012) (dismissing as superfluous claims against a defendant in their official capacity because the municipality and real party in interest was already a named defendant). Accordingly, the undersigned Magistrate Judge recommends Berryhill's Motion to Dismiss be GRANTED.

## III. City Motion to Dismiss

A claim for municipal liability "requires the plaintiff [to] prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights." *Cox v. Glanz*, 800 F.3d 1231, 1255 (10th Cir. 2015)

(internal quotations omitted). *See also Yarbrough v. City of Kingfisher*, 153 F.3d 730, 1998 WL 427122, at *3 (10th Cir. July 14, 1988) (unpublished Table Opinion) ("[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.") (*quoting Board of County Comm'rs v. Brown*, 520 U.S. 397. 404 (1997)).

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks and citations omitted). Plaintiff appears to allege municipal liability in his Amended Complaint based on an alleged failure to train, ratification, and possibly an official policy. City contends, however, that Plaintiff's Amended Complaint should be dismissed because it pleads insufficient facts that are conclusory and represent improper legal conclusions.

### A. Failure to Adequately Train or Supervise

"In order to prevail on a claim against a municipality for failure to train its police officers in the use of force, a Plaintiff must first prove the training was in fact inadequate, and then satisfy the following requirements: (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute

a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city towards persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training." *Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003) (*citing City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Generally, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, it is possible that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Canton*, 489 U.S. at 390. Importantly, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. Despite these hurdles, the undersigned Magistrate Judge finds for the reasons discussed below that Plaintiff sufficiently states a claim for failure to train.

1. **Violation of the Constitutional Limits on the Use of Force**

As to the first element, Plaintiff contends that the facts alleged would establish that Seagraves used excessive force while arresting him. To state an excessive force claim 'under the Fourth Amendment, plaintiffs must show *both* that a 'seizure' occurred and that

7

the seizure was 'unreasonable.'" *Thomas v. Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010) (emphasis in original) (*quoting Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000)). The Supreme Court stated in *Torres v. Madrid* that "[t]he application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." ⸺ U.S. ⸺, 141 S. Ct. 989, 994, 997-998 (2021) ("[W]e see no basis for drawing an artificial line between grasping with a hand and other means of applying physical force to effect an arrest."). Here, a seizure certainly occurred when Seagraves deployed the Taser the first time in an attempt to subdue and restrain Plaintiff.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Thus, in an excessive force inquiry, we ask whether the force used 'would have been reasonably necessary *if the arrest or the detention were warranted.*'" *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012) (emphasis in original) (*quoting Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007)). This inquiry is objective. *See Graham*, 490 U.S. at 397 ("[T]he question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.") (internal quotations omitted). An officer does not have to use the least intrusive means, as long as his conduct was reasonable, which is based on the totality of the circumstances. *Thomas*, 607 F.3d at 670; *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).

Because it is based on the totality of circumstances of each case, "[r]easonableness" does not have a precise test but rather "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. The Supreme Court outlined three factors that courts are to consider: (1) the severity of the crime for which the suspect was seized, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing. *Id.* Whether a particular use of force was reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

Application of the *Graham* factors generally favors Plaintiff here. Seagraves originally initiated a traffic stop of Plaintiff to issue a citation for an expired tag. Plaintiff alleges he then simply proceeded in the direction of a family member's home and was followed by Seagraves. Thus, it is alleged that Plaintiff committed a minor traffic infraction, as opposed to a crime of violence. *See Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016) ("Although the officers are correct that an officer can effect an arrest for even a minor infraction, Perea's minor offense—at most—supported the use of minimal force. Instead, the officers used a taser against Perea ten times in two minutes. Repeated use of the taser exceeded the minimal force that would be proportional to Perea's crime.") (*citing Fogarty v. Gallegos,* 523 F.3d 1147, 1160 (10th Cir.2008) (because detainee had committed only a petty misdemeanor, "the amount of force used should have been reduced accordingly")). *See also Est. of Booker v. Gomez,* 745 F.3d 405, 424 (10th Cir. 2014)

9

("Under prevailing Tenth Circuit authority, 'it is excessive to use a Taser to control a target without having any reason to believe that a lesser amount of force—or a verbal command—could not exact compliance.'") (*quoting Casey v. City of Federal Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007)). As in *Perea*, the infraction alleged here supports only minimal use of force at most.

The second and third factors – whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing – likewise generally favor the Plaintiff, as there is no indication that he posed a threat to the officers or others, or that he was resisting arrest. Although the Amended Complaint makes it clear that Plaintiff was moving away from Defendant Seagraves when he ran up on the porch, Plaintiff alleges that Seagraves had given him "no further instructions" after Seagraves returned to his car. The Amended Complaint further contains no allegations of any verbal commands given by Seagraves or Fell after Plaintiff stopped his vehicle, ran up on the porch, and turned around to face them, and he alleges that he had his hands in the air and repeatedly asked them not to kill him. It is thus not clear and certainly not alleged that Plaintiff posed a threat to the officers after he fell face down and was incapacitated after being Tased the first time, *see* Docket No. 26, p. 5, ¶ 18, or that he was resisting arrest or attempting to flee at that time. *Cf. Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) ("Even if Perea initially posed a threat to the officers that justified tasering him, the justification disappeared when Perea was under the officers' control. It is not reasonable for an officer to repeatedly use a taser

against a subdued arrestee they know to be mentally ill, whose crime is minor, and who poses no threat to the officers or others. Because the officers repeated use of the taser cannot be described as reasonable, at least after the point Perea was subdued, the third *Graham* factor weighs against the officers."). The undersigned Magistrate Judge thus finds that both the *Graham* factors and the stage of the case support a finding that Plaintiff sufficiently alleges a constitutional violation in his Amended Complaint. *See, e. g.*, *Cook v. City of Arvada, Colorado*, 2021 WL 243451, at *5 (D. Colo. Jan. 25, 2021) ("The *Graham* factors and the stage of litigation lean towards a … find[ing] that plaintiff has sufficiently alleged a constitutional violation under his coordinated use of force theory.").

### 2. Recurring Situation and Direct Causal Link

Plaintiff next alleges that the circumstances at issue came about from a routine traffic stop for an expired tag, *see* Docket No. 25, pp. 3-4, ¶¶ 10-12, which is a recurring situation commonly confronted by police offers. This satisfies the second element requiring the use of force to arise in a usual and recurring situation. Moreover, Plaintiff alleges that deficient training in the use of Tasers was the moving force in both Seagraves' and Fell's actions that day. *See id.* at 12, ¶ 43. This is sufficient for the fourth, direct causal link, element at this stage of litigation.

### 3. Deliberate Indifference

The third element, deliberate indifference, is usually established by alleging a pattern or practice. *Connick*, 563 U.S. at 61. Ordinarily, to sufficiently allege deliberate indifference in a failure to train case, the Plaintiff must allege a pattern or practice that

11

placed a policymaker, such as Chief Berryhill, on actual or constructive notice that a particular omission in training caused the constitutional violation in this case. *See Connick*, 563 U.S. at 62. Here, Plaintiff alleges pervasive misuse of Tasers in the Broken Arrow Police Department but points to no specific instances of misuse other than the one currently at issue in this case. *See* Docket No. 25 p. 13, ¶ 48; *see also Coffey v. McKinley Cty.*, 504 Fed. Appx. 715, 719 (10th Cir. 2012) (finding that one prior incident does not describe a pattern of violations). The Amended Complaint thus lacks a sufficient allegation of a pattern or practice. *See Iqbal*, 556 U.S. at 679.

As previously noted, however, courts have found a "narrow range of circumstances" where a pattern of similar violations is not necessary. *Id.* at 61, *see also Bryson*, 627 F.3d at 789 ("In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.") (*quoting Barney v. Pulsipher*, 143 F.3d 1299, 1307-08 (10th Cir. 1998)). The question is therefore whether the allegations in the Amended Complaint fall within the "narrow range of circumstances" sufficient to establish a claim for deliberate indifference based on single-incident liability.

To illustrate one such narrow circumstance, the Supreme Court in *Canton* hypothesized an example of a city arming a police force with firearms and deploying the

armed officers into the public to capture fleeing felons, but not training the officers in the constitutional limitations on the use of deadly force. *Canton*, 489 U.S. at 390 n.10 ("For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.") (*citing Tennessee v. Garner,* 471 U.S. 1, (1985)). *See also Connick*, 563 U.S. at 63-64. ("Armed police must sometimes make split-second decisions with life-or-death consequences. . . . And, in the absence of training, there is no way for novice officers to obtain the legal knowledge they require."). "Given the known frequency with which police attempt to arrest fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights,' the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the 'highly predictable consequence,' namely, violations of constitutional rights." *Connick*, 563 U.S. at 63-64 (*quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997)). In contrast, the *Connick* Court found that the mere fact that prosecutors may have difficulty in applying *Brady*'s requirements did not make obvious the need for a municipality to provide additional training in that area. *Id.* ("The obvious need for specific legal training that was present in the *Canton* scenario is absent here," in the context of training prosecutors).

In this case, Plaintiff's allegations as a whole, taken as true at this early stage in the proceeding, are more analogous to the hypothetical outlined in *Canton* than *Connick*, as officers regularly make traffic stops and can expect to deal with persons who refuse to pull over and flee or otherwise escalate the situation, reflecting an obvious need for specific training. *See Simpson v. Little*, 2020 WL 33216, at *6 (N.D. Okla. Jan. 2, 2020) (denying motion to dismiss municipal liability claim where the plaintiff sufficiently alleged the city failed to train its officers on "how to make a proper, lawful traffic stop or how to deal with persons who refuse to pull over for a patrol car."). *See also Osborn v. Meitzen*, 2020 WL 3800547, at *3 (E.D. Okla. July 6, 2020) (denying a motion to dismiss a municipal liability claim where the plaintiff sufficiently alleged deliberate indifference to the predictable consequence of the use of deadly force when using patrol vehicles as roadblocks); *Leadholm v. City of Com. City*, 2017 WL 1862313, at *7 (D. Colo. May 9, 2017) (denying a motion to dismiss a municipal liability claim and finding that the city's failure to train officers in interacting with medically inhibited drivers was more analogous to *Canton* than to *Connick*). The undersigned Magistrate Judge thus finds that the Plaintiff alleges at this stage a claim that City's failure to train its officers was the result of deliberate indifference to the predictable consequence of the use of Tasers in routine misdemeanor arrests. *See Connick*, 563 U.S. at 63-64. (noting that the predictability with which officers, in the field and under pressure, will violate the rights of citizens unless properly trained is so obvious that the failure to train could reflect a municipality's deliberate indifference to those violations). As such, the undersigned Magistrate Judge recommends that City's Motion to

Dismiss as to Plaintiff's claim of municipal liability based on an alleged failure to train be DENIED.

### B. Ratification by Final Policymakers

Next, the undersigned Magistrate Judge addresses any purported ratification claim Plaintiff may have alleged in his Amended Complaint. Plaintiff has not responded to any of Defendant's arguments regarding ratification allegations. Courts routinely deem an issue "waived" when a party fails to respond to a party's substantive argument. *See, e.g., Rock Roofing, LLC v. Travelers Cas. & Sur. Co.*, 413 F. Supp. 3d 1122, 1128 (D.N.M. 2019) (plaintiff's failure to respond to defendant's argument waived the issue); *Zane v. Kramer*, 195 F. Supp. 3d 1243, 1256 (W.D. Okla. 2016) (plaintiff waived claim where he did not respond to argument raised in defendants' summary judgment motion); *Palmer v. Unified Gov't of Wyandotte Cty./Kan. City, Kan.*, 72 F. Supp. 2d 1237, 1250–51 (D. Kan. 1999) ("[T]he court deems plaintiff's failure to respond to an argument raised in defendants' papers tantamount to an express abandonment of any such claim."). Because of Plaintiff's failure to respond, any ratification claim the Plaintiff may have made in his Amended Complaint should be considered waived. However, even if Plaintiff had responded, the allegation would fail for the reasons discussed below.

"A municipality will not be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson*, 627 F.3d at 790. *See also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("[W]hen a subordinate's decision is subject to review by the

municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.") (emphasis in original). Because a municipality cannot be held liable on a *respondeat superior* theory of liability, *see Monell v. Dept. of Soc. Svcs. of City of New York*, 436 U.S. 658, 691 (1978), Plaintiff here "must identify a policymaker who ratified the officer['s] actions." *Tivis v. City of Colorado Springs*, 2020 WL 1166842, at *5 (D. Colo. March 11, 2020) (*citing Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009)).

In this case, the Plaintiff alleges that Police Chief Berryhill ratified Seagraves and Fell's unconstitutional actions because he found no wrongdoing by the officers after the incident. Docket No. 25, pp. 9-10, ¶ 34. Such an allegation is insufficient to state a claim because "[f]ailing to adequately investigate or punish does not count as ratification." *Lynch v. Board of County Commissioners of Muskogee County, Oklahoma*, 786 Fed. Appx. 774, 787 (10th Cir. 2019). "The final policymaker must not only approve the decision, but also adopt the basis for the decision, and the ratification must be the *moving force, or cause*, of the alleged constitutional violation." *Dempsey v. City of Baldwin*, 143 Fed. Appx. 976, 986 (10th Cir. 2005) (emphasis added) (*citing Paprotnik*, 480 U.S. at 127 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.")). Any alleged post-act ratification by Chief Berryhill thus cannot establish a claim for municipal liability under a

16

theory of ratification. *See, e. g., Estate of Valverde v. Dodge*, 2017 WL 1862283, at *10 (D. Colo. May 9, 2017) ("Indeed, because the alleged ratification happened after the shooting, Plaintiff had already suffered the injury by the time it occurred. Therefore, Denver's acceptance and praise of Dodge's conduct did not cause Valverde's injury."). *See also Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("[B]asic principals of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation."). Moreover, Plaintiff alleges that both Seagraves and Fell failed to report the use of the taser to their superiors. This allegation, taken as true at this early stage of litigation, would preclude ratification by City for the simple reason that Plaintiff alleges City was ignorant of the conduct. The undersigned Magistrate Judge therefore finds that any claim by Plaintiff against City for municipal liability based on ratification should be dismissed.

### C. Formal Regulation or Policy Statement

There is also some indication that Plaintiff asserts in his Amended Complaint that City's use of force and search and seizure policies are constitutionally deficient as misleading and providing no clear directions. Docket No. 25 pp. 2, 11, 13, ¶¶ 8, 40, 45. While Plaintiff refers to City's search and seizure policy as "Exhibit 2," implying the existence of an "Exhibit 1," he neglected to attach either exhibit to his Amended Complaint. *Id.* at p. 11, ¶ 40. To the extent that Plaintiff discusses the contents of City's official policies, Plaintiff alleges that the policies themselves are insufficient as they do not direct officers in the proper deployment of tasers nor to relevant Tenth Circuit precedent,

17

*id*. at p. 2, ¶ 8, but he fails to allege these policies are the "moving force" for any alleged constitutional violation, only that one could reasonably infer deficient policies in light of what transpired. *Haines v. Fisher*, 82 F.3d 1503, 1507 (10th Cir. 1996) ("[T]he official policy must be the moving force for the constitutional violation in order to establish the liability of a government body under § 1983."); *see also Pembauer v. City of Cincinnati*, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.") (emphasis in original). Indeed, Plaintiff's allegations largely appear to restate his failure to train allegation, discussed above. *See Huff v. City of Aurora, Colorado*, 2022 WL 4131438, at *9 (D. Colo. Sept. 12, 2022) (dismissing a claim of unconstitutional formal policies where, for purposes of a motion to dismiss, the Court determined that Officer's actions violated the formal policy and therefore could not be "moving force" behind injury.). Plaintiff's allegations regarding an unconstitutional formal policy should therefore be dismissed.

Plaintiff was previously invited to and did amend his Complaint [Dkt. 23 and 25] in an attempt to address the issues raised in Defendants first motion to dismiss [Dkt. 4 and 5]. Although the Court should grant leave to amend freely "if it appears at all possible that the plaintiff can correct the defect" where dismissal is granted for failure to state a claim, *Triplett v. Leflore County, Okla.*, 712 F.2d 444, 446 (10th Cir. 1983), leave to amend is not automatic and the Court may properly deny leave to amend for "failure to cure deficiencies

by amendment previously allowed." *Bekkem v. Wilkie*, 915 F.3d 1257, 1275-76 (10th Cir. 2019) quoting *Willkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010). Considering the previous opportunity to amend and the inability of Plaintiff to assert facts supporting a plausible claim for of municipal liability for ratification and an unconstitutional formal policy as set forth above, the undersigned Magistrates recommends that any attempt to further amend the Amended Complaint should be denied.

## CONCLUSION

Accordingly, the undersigned Magistrate Judge RECOMMENDS that Defendant Berryhill's Motion to Dismiss [Docket No. 28] should be GRANTED as duplicative and Defendant City's Motion to Dismiss [Docket No. 30] should be GRANTED IN PART and DENIED IN PART, such that the Defendant City's Motion to Dismiss should be granted as to Plaintiff's claim of municipal liability under a theory of ratification and unconstitutional formal policy with prejudice as to Plaintiff's right to further amend his Amended Complaint and denied as to Plaintiff's claim of municipal liability for failure to train. Any objections to this Report and Recommendation must be filed within fourteen days. See 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

IT IS SO ORDERED this 28th day of November, 2022.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**