# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RYAN TYLER MERRILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. CIV-22-07-RAW-GLJ |
| JONATHAN SEAGRAVES, | ) |
| GREG FELL, CITY OF BROKEN | ) |
| ARROW, and BRANDON | ) |
| BERRYHILL, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Ryan Merrill ("Plaintiff") filed this civil rights action against Defendants Jonathan Seagraves and Greg Fell, Officers with the Broken Arow Police Department, as well as Broken Arrow Police Chief Brandon Berryhill and the City of Broken Arrow, alleging he was subject to excessive force under the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, as well as alleging claims of failure to train and failure to supervise. This matter now comes before the Court on Defendant Greg Fell's Motion to Dismiss Amended Complaint and Brief in Support [Docket No. 29]. On October 14, 2022, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636. *See* Docket No. 45. For the reasons set forth below, the undersigned Magistrate Judge now finds that Defendant Fell's Motion to Dismiss should be DENIED.

**Background**

As relevant to this motion, Plaintiff states in his Amended Complaint that he was driving on December 3, 2020, in Broken Arrow, Oklahoma when he was pulled over by Seagraves.  *See* Docket No. 24, p. 3, ¶¶ 10-11.  Seagraves was not wearing a mask when he approached the vehicle, so Plaintiff only partially rolled down his window to pass his license and insurance verification out of concern regarding the high level of COVID-19 at the time.  *Id.*  Seagraves went back to his car, prepared a citation, and returned to the vehicle where Plaintiff again only partially rolled down his window to receive a citation for an expired tag.  Seagraves demanded he fully roll down the window, but Plaintiff declined to roll it further than he deemed necessary to receive and sign the citation.  Seagraves then returned to his vehicle without giving further instructions.  *Id.*, p. 4, ¶ 12.  It is not clear from the Amended Complaint whether Seagraves attempted to pass the citation through the partially open window or whether Plaintiff signed the citation before Seagraves returned to his vehicle.

Plaintiff next stated that after Seagraves returned to his patrol vehicle, he waited "several more minutes" then drove within the speed limit toward his stepbrother's house while being followed by Seagraves.  During the drive, Seagraves was also joined by other officers, including Fell.  Upon arriving, Plaintiff states that he "ran up on a porch where he had been working," turned to face the approaching officers, and held his hands in the air with his phone in his right hand.  He asserts that he had no weapon and did not act in an aggressive manner.  *Id.*, p. 4, ¶¶ 13-14.  Both Seagraves and Fell approached Plaintiff with their firearms pointed at him while he pleaded with the officers not to kill him.  *Id.*,

p. 5, ¶ 15. Without warning, Seagraves drew his Taser and shot Plaintiff in the chest, incapacitating him and causing him to fall face down. Without warning, Seagraves then discharged the Taser a second time, hitting Plaintiff in the back. *Id.*, p. 5, ¶¶ 17-19. As relevant here, Plaintiff alleges that Fell failed to intervene to prevent the second Taser hit to his back. *Id.*, ¶ 18. He alleges that Fell observed Seagraves pointing the Taser at Plaintiff for longer than fifteen seconds, knew that unreasonable force was being threatened and used, and failed to intervene to protected Plaintiff when he posed no threat of danger to the officers or anyone else. *Id.*, p. 5, ¶ 22. EMSA personnel responded to the scene, but Seagraves and Fell refused transport and instead took Plaintiff to the Broken Arrow City jail before transporting him to St. John Medical Center in Tulsa, Oklahoma, where he was admitted in restraints. *Id.*, ¶¶ 22-23.

## Procedural History

Plaintiff filed this case on January 4, 2022. *See* Docket Nos. 1-2. He alleges several causes of action in his Amended Complaint, all pursuant to § 1983, including excessive force as to Seagraves and municipal liability as to the City of Broken Arrow and Police Chief Berryhill, while his sole claim as to Fell alleges failure to intervene. *See* Docket No. 25. Fell filed a Motion to Dismiss the claim against him [Docket No. 29].[1]

## Analysis

Fell moved to dismiss the claims against him, asserting that he had no reasonable opportunity to prevent the alleged excessive force, and that he is entitled to qualified

---

[1] The Motions to Dismiss filed by the City of Broken Arrow and Defendant Berryhill, *see* Docket Nos. 28, 30, are being addressed in a separate Report and Recommendation, *see* Docket No. 46.

immunity as the alleged acts and omissions were not prohibited by clearly established law. Plaintiff contends he has sufficiently alleged a claim as required under Fed. R. Civ. P. 8(a).

## Applicable Standards

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557, 570 (2007)). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555 (2007)). *See generally* Fed. R. Civ. P. 8(a)(2) (complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in h[is] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Thus, the appropriate inquiry is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (*quoting Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor

does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement[.]" *Iqbal*, 556 U.S. at 678.

Fell contends that he is entitled to qualified immunity at this stage. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). While *Twombly* "rejects a heightened pleading standard[,]" *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008), "[t]he *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation." *Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156, 1160 (10th Cir. 2018) (*quoting Robbins*, 519 F.3d at 1249). Indeed, "*Iqbal* reinforced our earlier statement that in a § 1983 action it is particularly important that the complaint make clear exactly *who* is alleged to have done *what* to *whom,* to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (emphasis in original) (quotations omitted).

Once a defendant has asserted a qualified immunity defense, "the plaintiff must meet a strict two-part test" to establish "'(1) that the defendant violated a constitutional or

5

statutory right, and (2) that this right was clearly established at the time of the defendant's conduct[.]'" *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (*quoting Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)). See also *Brown*, 662 F.3d at 1164 (same). "When qualified immunity is asserted in the context of a motion to dismiss, the factual allegations of the complaint are assumed to be true, and the court's analysis generally aligns with the analysis applied with determining the sufficiency of a claim." *Harper v. Woodward County Bd. Of County Commissioners*, 2014 WL 7399367, at *8 (W.D. Okla. Dec. 29, 2014) (*citing Brown*, 662 F.3d at 1162-1164 and *Iqbal*, 556 U.S. at 666, 673-675, 677-684). This means that, even at the dismissal stage, Plaintiff bears the burden of showing he has alleged a constitutional violation that was clearly established. See *Bledsoe v. Carreno*, 2022 WL 16942631, at *21 n.25 (10th Cir. Nov. 15, 2022) (slip op.) ("Appellants are correct that once they asserted qualified immunity in the district court, which they did here, it was Bledsoe's burden to show both that he had alleged a constitutional violation and that that violation was clearly established.") (*citing Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015)). The question before the Court, then, is whether Fell is entitled to qualified immunity on Plaintiff's claim for failure to intervene. The undersigned Magistrate Judge finds that he should not be granted qualified immunity at this stage.

## Failure to Intervene

"A plaintiff states a constitutional violation in the form of failure to intervene by alleging that 1) a government officer violated his constitutional rights, 2) a different government actor (the defendant) observed or had reasons to know about that

constitutional violation, and 3) the defendant had a realistic opportunity to intervene, but failed to do so." *Bledsoe*, 2022 WL 16942631, at *20 (*citing Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015); *Est. of Booker v. Gomez*, 745 F.3d 405, 422-23 (10th Cir. 2014)). *See also Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) ("An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official.") (*quoting Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). Thus, "[i]n order to be liable for failure to intervene, the officers must have 'observe[d] or ha[d] reason to know' of a constitutional violation and have had a 'realistic opportunity to intervene.'" *Jones*, 809 F.3d at 576 (*quoting Vondrak*, 535 F.3d at 1210). In other words, Plaintiff must sufficiently allege that Seagraves violated his clearly established constitutional rights through the use of excessive force, that Fell observed or had reason to know about this alleged constitutional violation, and that Fell had a realistic opportunity to intervene and did not. The question of qualified immunity is thus intertwined with the first element of the claim.

## Qualified Immunity

**Clearly Established.** Because a Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand[,]" *Pearson*, 555 U.S. at 236, the undersigned Magistrate Judge will address the question of whether a duty to intervene applicable to

this case was clearly established in December 2020 when Seagraves pulled Plaintiff over. "The Tenth Circuit has recognized 'that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.'" *Bledsoe*, 2022 WL 16942631, at *20 (*quoting Vondrak*, 535 F.3d at 1210). This duty to intervene to prevent another officer from engaging in excessive force *was* thus clearly established well before the December 2020 events in this case. *See Mascorro v. Billings*, 656 F.3d 1198, 1204 n.5 (10th Cir. 2011) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.") (*citing Mick v. Brewer,* 76 F.3d 1127, 1136 (10th Cir.1996) ("Tenth Circuit precedent clearly established before June 18, 1992 that a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983.")). *See also French v. City of Cortez*, 361 F. Supp. 3d 1011, 1038 (D. Colo. 2019) ("This duty to intervene was clearly established in 2014."). Because Fell had a clearly established duty to intervene at the time of the alleged incident, the undersigned Magistrate Judge now turns to the question of whether Plaintiff has alleged a constitutional violation.

**Violation of constitutional or statutory right.** Turning to the second prong of the qualified immunity analysis, which also addresses the first element of Plaintiff's failure-to-intervene claim, the undersigned Magistrate Judge finds that Plaintiff has sufficiently alleged a constitutional violation. Plaintiff contends that the facts alleged establish that Seagraves used unconstitutional excessive force while arresting him when he discharged

the Taser both times. Here, the applicable question is whether the second discharge of the Taser constituted excessive force as Plaintiff has alleged Fell's failure to intervene only as to the second discharge. The undersigned Magistrate finds that Plaintiff sufficiently alleges this element.

To state an excessive force claim 'under the Fourth Amendment, plaintiffs must show *both* that a 'seizure' occurred and that the seizure was 'unreasonable.'" *Thomas v. Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010) (emphasis in original) (*quoting Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000)). The Supreme Court stated in *Torres v. Madrid* that "[t]he application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." __ U.S. __, 141 S. Ct. 989, 997, 1003 (2021) ("[W]e see no basis for drawing an artificial line between grasping with a hand and other means of applying physical force to effect an arrest."). A seizure certainly occurred here when Seagraves deployed the Taser the first time in an attempt to subdue and restrain Plaintiff.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Thus, in an excessive force inquiry, we ask whether the force used 'would have been reasonably necessary *if the arrest or the detention were warranted.*'" *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012) (emphasis in original) (*quoting Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007)). This inquiry is objective. *See Graham*, 490 U.S. at 397 ("[T]he question is whether the officers' actions are objectively reasonable in light of the facts and

9

circumstances confronting them, without regard to their underlying intent or motivation.") (internal quotations omitted). An officer does not have to use the least intrusive means, as long as his conduct was reasonable, which is based on the totality of the circumstances. *Thomas*, 607 F.3d at 670; *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).

Because it is based on the totality of circumstances of each case, "[r]easonableness" does not have a precise test but rather "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. The Supreme Court outlined three factors that courts are to consider: (1) the severity of the crime for which the suspect was seized, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing. *Id.* Whether a particular use of force was reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*.

Application of the *Graham* factors generally favors Plaintiff here. Seagraves originally initiated a traffic stop of Plaintiff to issue a citation for an expired tag. Plaintiff alleges he then simply proceeded in the direction of a family member's home and was followed by Defendant Seagraves. The facts as stated thus indicate that Plaintiff had committed a minor traffic infraction, as opposed to a crime of violence. *See Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016) ("Although the officers are correct that an officer can effect an arrest for even a minor infraction, Perea's minor offense—at most—supported the use of minimal force. Instead, the officers used a taser against Perea ten times in two minutes. Repeated use of the taser exceeded the minimal force that would be

proportional to Perea's crime.") (*citing Fogarty v. Gallegos,* 523 F.3d 1147, 1160 (10th Cir.2008) (because detainee had committed only a petty misdemeanor, "the amount of force used should have been reduced accordingly[.]")). *See also Est. of Booker,* 745 F.3d at 424 ("Under prevailing Tenth Circuit authority, 'it is excessive to use a Taser to control a target without having any reason to believe that a lesser amount of force—or a verbal command—could not exact compliance.'") (*quoting Casey v. City of Federal Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007)).  As in *Perea*, the infraction alleged here supports only a minimal use of force at most.

The second and third factors – whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing – likewise generally favor Plaintiff, as there is no indication that he posed a threat to the officers or others, or that he was resisting arrest. Although the Amended Complaint makes it clear that Plaintiff was moving away from Seagraves when he ran up on the porch, Plaintiff alleges that Seagraves had given him "no further instructions" after Defendant Seagraves returned to his car.  The Amended Complaint further contains no allegations of any verbal commands given by Seagraves or Fell after Plaintiff stopped his vehicle, ran up on the porch, and turned around to face them, and he alleges that he had his hands in the air and repeatedly asked them not to kill him.  It is thus not clear and certainly not alleged that Plaintiff posed a threat to the officers after he fell face down and was incapacitated, *see* Docket No. 26, p. 5, ¶ 18, or that he was resisting arrest or attempting to flee at that time.  *Cf. Perea*, 817 F.3d at 1204 ("Even if Perea initially posed a threat to the officers that justified tasering him, the justification

11

disappeared when Perea was under the officers' control. It is not reasonable for an officer to repeatedly use a taser against a subdued arrestee they know to be mentally ill, whose crime is minor, and who poses no threat to the officers or others. Because the officers' repeated use of the taser cannot be described as reasonable, at least after the point Perea was subdued, the third *Graham* factor weighs against the officers."). The undersigned Magistrate Judge thus finds that both the *Graham* factors and this early stage of the case support a finding that Plaintiff sufficiently alleges a constitutional violation in his Amended Complaint. *See, e. g.*, *Cook v. City of Arvada, Colorado*, 2021 WL 243451, at *5 (D. Colo. Jan. 25, 2021) ("The *Graham* factors and the stage of litigation lean towards a denial of qualified immunity here. I find that plaintiff has sufficiently alleged a constitutional violation under his coordinated use of force theory.").

**Failure to Intervene.** In addition to a properly alleged constitutional violation sufficient to establish the first element of his claim, the undersigned Magistrate Judge finds that Plaintiff sufficiently includes an allegation as to the second element, when he alleges "Fell failed to intervene to prevent Seagraves from" firing his taser a second time, Docket No. 25, pp. 5, ¶ 18, and that, "[o]bserving Seagrave[s] continue to point his taser at the Plaintiff for longer than 15 seconds, Officer Fell failed to intervene to stop Seagrave[s] from firing his taser without warning," that he "knew that unreasonable force was being threatened and used," and that "Fell failed to intervene to protect the Plaintiff and to stop Seagrave[s] from firing a second time," *Id.*, p. 6, ¶ 22.

Finally, the undersigned Magistrate Judge turns to the third element in any failure-to-intervene claim, whether "the defendant had a realistic opportunity to intervene, but

12

failed to do so." *Bledsoe*, 2022 WL 16942631, at *20. "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Vondrak*, 535 F.3d at 1210 (*quoting Anderson*, 17 F.3d at 557). Plaintiff alleges that Fell was present throughout Seagraves's actions and that he failed to intervene in the time between the first and second uses of the Taser. Whether or not that time was sufficient is a question of fact for the jury and not to be resolved at this stage of litigation. The undersigned Magistrate Judge thus finds that Fell is not entitled to qualified immunity at this time and that Plaintiff has alleged a claim for failure to intervene sufficient to survive the dismissal stage.

## CONCLUSION

Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that Defendant Greg Fell's Motion to Dismiss and Amended Complaint and Brief in Support [Docket No. 29] be DENIED as to the Plaintiff's claim against Defendant Fell for failure to intervene. Any objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

IT IS SO ORDERED this 28th day of November, 2022.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**